# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FAIRWAY INDEPENDENT MORTGAGE CORPORATION as Plan Administrator for the FAIRWAY INDEPENDENT MORTGAGE CORPORATION MEDICAL PLAN, <br><br> Plaintiff, <br><br> v. <br><br> ERIC JUNGNICKEL, ANCEL GLINK P.C. Defendants. | ) ) ) ) ) ) ) Case # 23-CV-5139 ) ) ) ) ) |

## COMPLAINT

Plaintiff, FAIRWAY INDEPENDENT MORTGAGE CORPORATION as Plan Administrator for the FAIRWAY INDEPENDENT MORTGAGE CORPORATION MEDICAL PLAN, ("Plaintiff"), by and through its attorneys, KOLB CLARE & ARNOLD PC, submits this Complaint against Defendants, ERIC JUNGNICKEL ("JUNGNICKEL") and ANCEL GLINK P.C.("ANCEL") as follows:

## NATURE OF ACTION

1.      This is an action under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(3), for equitable relief to remedy JUNGNICKEL'S and ANCEL'S violations of the terms of a certain employee health benefit plan ("the Plan") sponsored by Plaintiff seeks equitable relief in the form of a declaration of Plaintiffs' rights, constructive trust and/or equitable lien upon amounts held by any Defendants, that belong to the Plan, in accordance with ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

**JURISDICTION**

2.     This Court has original and exclusive jurisdiction over Plaintiff's claims for relief under this count pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

**VENUE**

3.     Venue is proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), of ERISA because on information and belief the at least some of the Defendants reside in this judicial district and because, on information and belief, some of the funds at issue are being held in this judicial district.

**PARTIES**

4.     Plaintiff sponsors and is a fiduciary of the FAIRWAY INDEPENDENT MORTGAGE CORPORATION MEDICAL PLAN ("the Plan").  The Plan is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. §1002(1).

5.     At all relevant times, JUNGNICKEL was a plan participant/plan beneficiary in the Plan.  ANCEL was a law firm retained by JUNGNICKEL to represent him in a claim for personal injuries he sustained that were caused by negligent third parties and ANCEL did represent JUNGNICKEL for all or some of such claims.

**FACTUAL BACKGROUND**

6.     The Plan provides health benefits to eligible FAIRWAY INDEPENDENT MORTGAGE CORPORATION. employees and their eligible spouses and dependents.  The Plan is self-funded by FAIRWAY INDEPENDENT MORTGAGE CORPORATION. The terms of the Plan are contained in the Plan's Summary Plan Description ("SPD") and have been amended from time to time as appropriate over the relevant time period.  True and correct copies of the relevant

excerpts from such documents are attached as Exhibit A to this Complaint.

7.     As of September 2020 and prior thereto, JUNGNICKEL was enrolled in the Plan as a plan participant.

8.     The summary plan description for the Plan contained the terms of the Plan to which both Plaintiff and JUNGNICKEL were obligated.

9.     The summary plan description states, in pertinent part, the following at p. 102-105 (see Exhibit A attached hereto and incorporated herein by reference):

## SECTION 11 - SUBROGATION AND REIMBURSEMENT

The Plan has a right to subrogation and reimbursement. References to "you" or "your" in this *Subrogation and Reimbursement* section shall include you, your estate and your heirs and beneficiaries unless otherwise stated.

Subrogation applies when the plan has paid Benefits on your behalf for a Sickness or Injury for which any third party is allegedly responsible. The right to subrogation means that the Plan is substituted to and shall succeed to any and all legal claims that you may be entitled to pursue against any third party for the Benefits that the Plan has paid that are related to the Sickness or Injury for which any third party is considered responsible.

*Subrogation – Example*
Suppose you are injured in a car accident that is not your fault, and you receive Benefits under the Plan to treat your injuries. Under subrogation, the Plan has the right to take legal action in your name against the driver who caused the accident and that driver's insurance carrier to recover the cost of those Benefits.

The right to reimbursement means that if it is alleged that any third party caused or is responsible for a Sickness or Injury for which you receive a settlement, judgment, or other recovery from any third party, you must use those proceeds to fully return to the Plan 100% of any Benefits you receive for that Sickness or Injury. The right of reimbursement shall apply to any Benefits received at any time until the rights are extinguished, resolved or waived in writing.

*Reimbursement – Example*
Suppose you are injured in a boating accident that is not your fault, and you receive Benefits under the Plan as a result of your injuries. In addition, you receive a settlement in a court proceeding from the individual who caused the accident. You must use the settlement funds to return to the plan 100% of any Benefits you received to treat your injuries.

The following persons and entities are considered third parties:
■ A person or entity alleged to have caused you to suffer a Sickness, Injury or damages, or

who is legally responsible for the Sickness, Injury or damages.

■ Any insurer or other indemnifier of any person or entity alleged to have caused or who caused the Sickness, Injury or damages.

■ The Plan Sponsor in a workers' compensation case or other matter alleging liability.

■ Any person or entity who is or may be obligated to provide Benefits or payments to you, including Benefits or payments for underinsured or uninsured motorist protection, nofault or traditional auto insurance, medical payment coverage (auto, homeowners or otherwise), workers' compensation coverage, other insurance carriers or third party administrators.

■ Any person or entity against whom you may have any claim for professional and/or legal malpractice arising out of or connected to a Sickness or Injury you allege or could have alleged were the responsibility of any third party.

■ Any person or entity that is liable for payment to you on any equitable or legal liability theory.

You agree as follows:

■ You will cooperate with the Plan in protecting its legal and equitable rights to subrogation and reimbursement in a timely manner, including, but not limited to:

- Notifying the Plan, in writing, of any potential legal claim(s) you may have against any third party for acts which caused Benefits to be paid or become payable.
- Providing any relevant information requested by the Plan.
- Signing and/or delivering such documents as the Plan or its agents reasonably request to secure the subrogation and reimbursement claim.
- Responding to requests for information about any accident or injuries.
- Making court appearances.
- Obtaining the Plan's consent or its agents' consent before releasing any party from liability or payment of medical expenses.
- Complying with the terms of this section.

Your failure to cooperate with the Plan is considered a breach of contract. As such, the Plan has the right to terminate your Benefits, deny future Benefits, take legal action against you, and/or set off from any future Benefits the value of Benefits the Plan has paid relating to any Sickness or Injury alleged to have been caused or caused by any third party to the extent not recovered by the Plan due to you or your representative not cooperating with the Plan. If the Plan incurs attorneys' fees and costs in order to collect third party settlement funds held by you or your representative, the Plan has the right to recover those fees and costs from you. You will also be required to pay interest on any amounts you hold which should have been returned to the Plan.

■ The Plan has a first priority right to receive payment on any claim against any third party before you receive payment from that third party. Further, the Plan's first priority right to payment is superior to any and all claims, debts or liens asserted by any medical providers, including but not limited to hospitals or emergency treatment facilities, that assert a right to payment from funds payable from or recovered from an allegedly responsible third party and/or insurance carrier.

■ The Plan's subrogation and reimbursement rights apply to full and partial settlements, judgments, or other recoveries paid or payable to you or your representative, your estate, your heirs and beneficiaries, no matter how those proceeds are captioned or characterized. Payments include, but are not limited to, economic, non-economic, pecuniary, consortium and punitive damages. The Plan is not required to help you to pursue your claim for damages or personal injuries and no amount of associated costs, including attorneys' fees, shall be deducted from the Plan's recovery without the Plan's express written consent. No so-called "Fund Doctrine" or "Common Fund Doctrine" or "Attorney's Fund Doctrine" shall defeat this right.

■ Regardless of whether you have been fully compensated or made whole, the Plan may collect from you the proceeds of any full or partial recovery that you or your legal representative obtain, whether in the form of a settlement (either before or after any determination of liability) or judgment, no matter how those proceeds are captioned or characterized. Proceeds from which the Plan may collect include, but are not limited to, economic, non-economic, and punitive damages. No "collateral source" rule, any "Made-Whole Doctrine" or "Make-Whole Doctrine," claim of unjust enrichment, nor any other equitable limitation shall limit the Plan's subrogation and reimbursement rights.

■ Benefits paid by the Plan may also be considered to be Benefits advanced.
■ If you receive any payment from any party as a result of Sickness or Injury, and the Plan alleges some or all of those funds are due and owed to the Plan, you and/or your representative shall hold those funds in trust, either in a separate bank account in your name or in your representative's trust account.
■ By participating in and accepting Benefits from the Plan, you agree that (i) any amounts recovered by you from any third party shall constitute Plan assets to the extent of the amount of Plan Benefits provided on behalf of the Covered Person, (ii) you and your representative shall be fiduciaries of the Plan (within the meaning of ERISA) with respect to such amounts, and (iii) you shall be liable for and agree to pay any costs and fees (including reasonable attorney fees) incurred by the Plan to enforce its reimbursement rights.
■ The Plan's rights to recovery will not be reduced due to your own negligence.
■ By participating in and accepting Benefits from the Plan, you agree to assign to the Plan any Benefits, claims or rights of recovery you have under any automobile policy - including no-fault Benefits, PIP Benefits and/or medical payment Benefits - other coverage or against any third party, to the full extent of the Benefits the Plan has paid for the Sickness or Injury. By agreeing to provide this assignment in exchange for participating in and accepting Benefits, you acknowledge and recognize the Plan's right to assert, pursue and recover on any such claim, whether or not you choose to pursue the claim, and you agree to this assignment voluntarily.

■ The Plan may, at its option, take necessary and appropriate action to preserve its rights under these provisions, including but not limited to, providing or exchanging medical payment information with an insurer, the insurer's legal representative or other third party; filing an ERISA reimbursement lawsuit to recover the full amount of medical

Benefits you receive for the Sickness or Injury out of any settlement, judgment or other recovery from any third party considered responsible and filing suit in your name or your estate's name, which does not obligate the Plan in any way to pay you part of any recovery the Plan might obtain. Any ERISA reimbursement lawsuit stemming from a refusal to refund Benefits as required under the terms of the Plan is governed by a six year statute of limitations.

■ You may not accept any settlement that does not fully reimburse the Plan, without its written approval.

■ The Plan has the authority and discretion to resolve all disputes regarding the interpretation of the language stated herein.

■ In the case of your death, giving rise to any wrongful death or survival claim, the provisions of this section apply to your estate, the personal representative of your estate, and your heirs or beneficiaries. In the case of your death the Plan's right of reimbursement and right of subrogation shall apply if a claim can be brought on behalf of you or your estate that can include a claim for past medical expenses or damages. The obligation to reimburse the Plan is not extinguished by a release of claims or settlement agreement of any kind.

■ No allocation of damages, settlement funds or any other recovery, by you, your estate, the personal representative of your estate, your heirs, your beneficiaries or any other person or party, shall be valid if it does not reimburse the Plan for 100% of its interest unless the Plan provides written consent to the allocation.

■ The provisions of this section apply to the parents, guardian, or other representative of a Dependent child who incurs a Sickness or Injury caused by any third party. If a parent or guardian may bring a claim for damages arising out of a minor's Sickness or Injury, the terms of this subrogation and reimbursement clause shall apply to that claim.

■ If any third party causes or is alleged to have caused you to suffer a Sickness or Injury while you are covered under this Plan, the provisions of this section continue to apply, even after you are no longer covered.

■ In the event that you do not abide by the terms of the Plan pertaining to reimbursement, the Plan may terminate Benefits to you, your dependents or the participant, deny future Benefits, take legal action against you, and/or set off from any future Benefits the value of Benefits the Plan has paid relating to any Sickness or Injury alleged to have been caused or caused by any third party to the extent not recovered by the Plan due to your failure to abide by the terms of the Plan. If the Plan incurs attorneys' fees and costs in order to collect third party settlement funds held by you or your representative, the Plan has the right to recover those fees and costs from you. You will also be required to pay interest on any amounts you hold which should have been returned to the Plan.

■ The Plan and all Administrators administering the terms and conditions of the Plan's subrogation and reimbursement rights have such powers and duties as are necessary to discharge its duties and functions, including the exercise of its discretionary authority to (1) construe and enforce the terms of the Plan's subrogation and reimbursement rights and (2) make determinations with respect to the subrogation amounts and reimbursements owed to the Plan.

10.    The terms of said Plan were in effect as of September 1, 2020 and continued on

through the present

11.      At the time of the Plan's inception and certainly in 2020, there was a rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing.  The above referenced subrogation/reimbursement section of the Plan being a portion of the agreement between the Plan and JUNGNICKEL was an undertaking that created a lien on the res of the settlement funds to be obtained from third parties causing JUNGNICKEL injury and before those specific funds were specifically identifiable and once identified, that lien attached to those funds and Plaintiff could follow those specific funds right into the hands of Defendants. *Sereboff v. Mid Atlantic Medical Services Inc.*, 547 U.S. 356, 363-4 (20006)

12.      In 2020, JUNGNICKEL sustained injuries due to the negligence of a liable third party(s).

13.      The Plan paid medical expenses of approximately $178,750.85 on behalf of JUNGNICKEL for treatment of the injuries he sustained as a result of the negligent third party's acts/omissions.

14.      The Plan paid the benefits referenced in the paragraph above and JUNGNICKEL accepted them under the condition that he reimburse the Plan, to the extent of benefits paid, from the specific funds or res he obtained from liable third party(ies), Such was not merely a promise to pay the value of medical expenses; it was a promise to pay over the specific settlement funds or recovery obtained by JUNGNICKEL.

15.      Plaintiff has been informed that pursuant to work performed by ANCEL for

7

JUNGNICKEL, JUNGNICKEL obtained a settlement from the other parties responsible for his injuries in an amount of at least $900,000.00 ("lawsuit recovery").

16.    JUNGNICKEL and ANCEL received specific settlement funds constituting the recovery from the tortfeasors and/or their insurers who injured JUNGNICKEL. They were on notice of Plaintiff's reimbursement interest and lien at all relevant times.

17.    As set forth in the SPD language referenced above, JUNGNICKEL acknowledged by specific contractual agreement in advance of his obtaining a settlement recovery for his injuries that the **Plan had a first priority right** on the specific res of funds from any recovery received from any third party and that such were to be considered Plan assets and were to be held in trust for the benefit of the Plaintiff.  As such, JUNGNICKEL held a fiduciary obligation to the Plan to hold the specific res of the recovery in trust until the Plan's interest in it was satisfied from that res.

18.    In 2022 and 2023, Rule 1.15 of the Illinois Attorneys Rules of Professional Conduct at section (d) stated, "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."  Section (e) of that rule stated, "(e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests

are not in dispute." Comment 1 to that rule stated, "A lawyer should hold property of others with the care required of a professional fiduciary."

19.     Pursuant to Rule 1.15(d) of the Illinois Attorneys Rules of Professional Conduct, ANCEL owed a duty to the Plan, independent of the Plan terms or ERISA laws, to hold the recovery funds, i.e. the specific res of the settlement funds, in trust for the benefit of the Plan until any dispute regarding the recovery funds ownership or allocation was resolved. As such it owed a fiduciary duty to the Plan when it took possession of the res of the Recovery funds and was obligated to turn over to the Plan its share of the res of the settlement funds. ANCEL, as attorneys failed to honor a reimbursement lien despite its role as a fiduciary to the Plan per Rule 1.15 and their failure constituted conversion of trust funds by a fiduciary. *Western States Insurance Co. v. Louis E. Olivero, & Associates*, 283 Ill. App. 3d 307, 670 N.E.2d 303 (3rd Dist. 1996)

20.     At the time ANCEL and JUNGNICKEL obtained the recovery funds from the personal injury settlement of at least $900,000.00 referenced above, Plaintiff had a right to possession and control said funds to the extent of its aforesaid lien by agreement and trust and Defendants JUNGNICKEL AND ANCEL exercised unauthorized control and dominion over said funds to the detriment of Plaintiff through their failure to remit and satisfy Plaintiff's lien from the res of the settlement funds which was part of the Recovery. *Cirrincione v. Johnson*, 184 Ill.2d 109, 114-5, 703 N.E.2d 67, 70 (1998); *Western States Insurance Co. v. Louis E. Olivero, & Associates*, 283 Ill. App. 3d 307, 670 N.E.2d 303 (3rd Dist. 1996)

21.     Upon information and belief, ANSEL retained and continues to possess at least one-third of the recovery funds obtained by judgment/settlement of JUNGNICKEL'S injury claim taken as a fee for obtaining recovery amounting to a figure in excess of $200,000.00. Upon

information and belief, ANCEL also paid to JUNGNICKEL a portion of the res of the recovery funds which JUNGNICKEL continues to own and possess. Further details regarding the exact accounts into which ANCEL and JUNGNICKEL placed their shares of the recovery funds is information exclusively in the possession of ANCE and JUNGNICKEL for which discovery will be necessary for the Plan to ascertain as ANCEL and JUNGNICKEL have failed to provide such information. Under Rule 8(a), "[w]here pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005); *Mission Measurement Corporation v. Blackbaud Inc.*, 287 F. Supp.3d 691, 700 (N.D. ILL 2017)

22. Plaintiff has made repeated demands to all Defendants for tender of the res of the injury settlement recovery funds to the extent of $178,750.85. Despite repeated demands, those Defendants have refused to reimburse the Plan out of the funds they have received for the injury claims of JUNGNICKEL and such has harmed Plaintiff.

## COUNT I

## CLAIMS FOR RELIEF UNDER ERISA § 502(a)(3)

23. Plaintiff re-states and re-allege paragraphs 1 – 22 of the Complaint as if fully set forth herein.

24. The Plaintiffs have a right to reimbursement for the $178,750.85 in medical benefits it paid on behalf of JUNGNICKEL pursuant to its equitable lien and constructive trust on the res of the injury settlement funds, i.e. the Recovery held by Defendants and the property acquired with it.

25. Defendants have refused to reimburse the Plan, in violation of the terms of the Plan.

26. Defendants have been unjustly enriched by this refusal to reimburse the Plan for the medical benefits it paid on JUNGNICKEL'S behalf.

27. As a result of Defendants' violation of the terms of the Plan, the Plan has been harmed and Plaintiffs seek all appropriate equitable relief, pursuant to ERISA § 502(a)(3), to enforce the terms of the Plan, including, but not limited to:

    (a) the imposition of a constructive trust and equitable lien in favor of the Plaintiff upon the res of the specific settlement proceeds identified herein and any property acquired with it, (the recovery) plus accumulated interest;

    (b) an equitable surcharge to be imposed on Defendants for failure to return the property due Plaintiff and any unjust enrichment accumulated to date for failure to return such property; *Cigna v. Amara*,

    (c) a declaration of the Plan's ownership of the above-referenced settlement proceeds and quieted title to same up to the full amount of payments made by the Plan for JUNGNICKEL'S medical expenses and that such is a first priority right (*Cognetta v. Bonavita*, 330 F.Supp.3d 797, 807-811 (E.D. N.Y. 2018); and

    (d) an injunction order directing Defendants to pay or turn over such portion of the res of the res of the personal injury settlement funds as they hold or is subject to their control and any property acquired with it to the extent of Plaintiff's lien, plus accumulated interest and unjust enrichment to the Plan to the extent of its interest therein, and attorneys' fees incurred.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request that the Court enter a Judgment and Order in their favor including, but not limited to:

(a) the imposition of a constructive trust and equitable lien in favor of the Plaintiff upon the res of the specific settlement proceeds identified herein, (the recovery), and any property traceable to the recovery funds, in the amount of $178,750.85, plus accumulated interest;

(b) an equitable surcharge to be imposed on Defendants in the amount of $178,750.85 for failure to return the property due Plaintiff and any unjust enrichment accumulated to date for failure to return such property (*Kenseth v. Dean Health Plan Inc.*, 722 F.3d 869, 882-3 (7th Cir. 2013)

(c) a declaration of the Plan's ownership of the above-referenced settlement proceeds and quieted title to same up to the full amount of payments made by the Plan for JUNGNICKEL'S medical expenses and that such is a first priority right (*Cognetta v. Bonavita*, 330 F.Supp.3d 797, 807-811 (E.D. N.Y. 2018); and

(d) an injunction order directing Defendants to pay or turn over such portion of the res of the personal injury settlement funds and traceable property to such res as they hold or is subject to their control to the extent of Plaintiff's lien, plus accumulated interest and unjust enrichment to the Plan to the extent of its interest therein, and attorneys' fees incurred.

(e) ordering Defendants to pay Plaintiffs' reasonable costs and attorney's fees incurred

in connection with this action; and

(f) any other relief the Court deems just and equitable.

Respectfully submitted,

By:    /s/ *Bradley M. Arnold*

Bradley M. Arnold
KOLB CLARE & ARNOLD PSC
1110 W. Lake Cook Road, #150
Buffalo Grove, IL 60089
(T) 630-550-5228
(F) 844-557-4329
ARDC# 6255567
barnold@kcalegal.com